# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

RODERICK WILLIAMS,                    )
                                      )
            Petitioner,               )
                                      )
    vs.                               )          Case No. 12-3039-CV-S-DW-P
                                      )
JEFF NORMAN,                          )
                                      )
            Respondent.               )

## OPINION AND ORDER DENYING PETITION FOR HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, Roderick Williams, filed this pro se habeas corpus petition pursuant to 28 U.S.C. § 2254 on January 20, 2012, seeking to challenge his 2006 convictions and sentences for two counts of forcible rape, which were entered in the Circuit Court of Barry County, Missouri.

Petitioner raises five grounds for relief: (1) that the trial court abused its discretion by prohibiting petitioner from questioning prospective jurors about whether they could consider the entire range of punishment for forcible rape; (2) that the trial court erred in overruling petitioner's objections and post-trial motions for a new trial; (3) that the trial court abused its discretion when it denied the defense counsel's motion for a mental examination; (4) that the trial court abused its discretion in sending Kashina Bergesch's written statement to the jury during its deliberation; and (5) that the motion court erred in denying petitioner's Rule 29.15 motion for post-conviction relief because petitioner's counsel was allegedly ineffective.

## SUMMARY OF THE FACTS

On direct appeal, the Missouri Court of Appeals summarized the facts as follows:

> On the evening of October 28, 2004, Victim, who was sixteen years old, went to visit her friend, Kashina Bergesch ("Bergesch").

Bergesch lived in a second-floor apartment. Bergesch had to leave for a little while, and Victim sat at the top of the stairs for about thirty minutes waiting for Bergesch to return. [Petitioner] and Michael Wilson ("Wilson") came up the stairs and knocked on Bergesch's door. When no one answered the door, the two men sat and talked with Victim, although she did not know who they were. [Petitioner], who was twenty-four years old, gave Victim some vodka to drink, and the three of them sat there drinking for about an hour. Victim stood up and started to fall because she was tipsy, and [petitioner] caught her. [Petitioner] tried to kiss her, and she pushed away from him. Then [petitioner] and Wilson pushed Victim through the window of a vacant apartment next to Bergesch's apartment. Wilson took off Victim's shoes and pants while she was hitting him and screaming at him to stop. Then one of them hit her in the head, and she fell to the floor. They pulled her into the kitchen, and Wilson had sexual intercourse with her. Victim fought and yelled, "No" for a while, but eventually she gave up because he wouldn't stop. When Wilson was finished, [petitioner] pulled Victim further into the kitchen and had sexual intercourse with her. While he was having sex with her, Bergesch was walking up the stairs and, hearing Victim screaming, she came into the apartment and pulled [petitioner] off of Victim. Bergesch took Victim to her apartment. A female officer who had arrived at the scene convinced Victim to go to the hospital. Sperm was detected in the vaginal swabs taken as a part of the rape kit at the hospital. DNA testing performed on the sperm cells revealed a mixture of two individuals; [petitioner] was consistent with being a major contributor, and Wilson was consistent with being a minor contributor.

[Petitioner] was charged, convicted, and sentenced[.]

(Respondent's Exhibit E, pp. 2-3).

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. Marshall v. Lonberger, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. Graham v. Solem, 728 F.2d 1533, 1540 (8th Cir. en banc 1984). It is petitioner's burden to establish by clear and

convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUNDS 1, 2, 3, & 4

In ground 1, petitioner contends that the trial court abused its discretion when it prohibited petitioner from questioning prospective jurors about whether they could consider the entire range of punishment for forcible rape. In ground 2, petitioner contends that the trial court erred in overruling his objections to the jury selection process and denying his motion for a new trial. In ground 3, petitioner contends that the trial court erred in denying his motion for a mental examination on the day before trial. In ground 4, petitioner contends that the trial court abused its discretion by allowing the jury to view a witness's written statement while deliberating.

On direct appeal, the Missouri Court of Appeals disposed of the claims raised in grounds 1, 2, 3, and 4 as follows:

[Ground 1]

[Petitioner] argues that his right to an impartial jury under the United States and Missouri Constitutions was denied because he could not determine if any potential jurors held prejudice or bias that would prevent them from fully considering the entire range of punishment.

Before *voir dire* commenced, the trial court sustained the State's Second Motion in Limine, which requested the court to preclude [petitioner] from making statements in the presence of the jury or

---

[1] "In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

-3-

adducing any evidence or testimony concerning the specific ranges of punishment for the charged offenses. The trial court, however, instructed [petitioner] that he could inquire about punishment during *voir dire*, using the general language set forth in ***State v. Busse***, 169 S.W.3d 900 (Mo. App. 2005), as a guideline. n.4

> n.4   In ***Busse***, the defendant was charged with first-degree murder, and defense counsel attempted to inform the jury panel during *voir dire* that the punishment for that offense is life without parole. 169 S.W.3d at 903-04. Following the State's objection, the trial court instructed defense counsel that he could only talk about the punishment in general terms, such as "it'll be a long time," or "an extreme number of years, lots of years[.]" Defense counsel asked the court, "Can I talk about anything with the range of punishment in reference to years?" The court responded, "Sure. You can talk about it'll be a long time, but as far as the specific range of number of years, that's inappropriate." ***Id.*** at 904. Defense counsel told the court he also wanted to inform the jury panel that the range of punishment for the lesser included offense of second-degree murder is ten to thirty years or life. ***Id.*** at 904. The court responded, "Well, we're not going to talk about up and down the ranges on whether they don't find guilty on one. We're not going to talk about specific term of years.... You're being disallowed from asking it and giving that range of years. I'm telling you, you can emphasize the fact we're talking about a lot of years." ***Id.***

[Petitioner] asked the trial court if, at the appropriate time before the jury panel was released, he could make a record with regard to the questions he would like to ask. The trial court responded that he would be allowed to make that record.

[Petitioner] did not ask any questions relating to punishment, nor did he make a record regarding the questions he desired to ask related to punishment during *voir dire*. At the conclusion of *voir dire*, the jury panel was dismissed for lunch while the trial court considered challenges for hardship. After the jury panel was released, but before taking up the challenges for cause, [petitioner] asked the trial court if it was the appropriate time to make his record. The State objected:

-4-

BY [THE STATE]: Judge. I don't think there—There was never any question—there wasn't a single solitary question asked along the lines of this Court was going to allow them to inquire about it.

BY [DEFENSE COUNSEL]: I understand that, Judge. Well, you said I could—you were not going to allow me to ask specific questions about punishment.

BY THE COURT: No, but I was going to allow you to ask questions that—

BY [DEFENSE COUNSEL]: Right.

BY THE COURT:—would go to jail time, that would go to a lot of time, but you didn't-didn't do that.

BY [DEFENSE COUNSEL]: I didn't do that, but what I would like to have been able to ask was—you know, your total range of punishment on forcible rape is from five years to life, could you consider that punishment? It was my understanding I would not be allowed to ask that question.

BY [THE STATE]: Judge, during the voir dire process, which was a [sic] hour and a half, he didn't ask any questions that the Court specifically said he could ask. So I think he's trying on the backhand to make a record about something that he chose not to do is in appropriate [sic].

BY THE COURT: Well, you can make the record, but I think that you had to go into inquiry[,] and I think you had to, at least, proceed along the line where I gave you the opportunity to discuss punishment.

BY [DEFENSE COUNSEL]: Well, thank you, Judge. My record would be that if I had been permitted to do so, I would have inquired to the specific entire range of punishment for forcible rape[,] which is a minimum of five years to life in prison, further the specific entire range of punishment for statutory rape, a minimum of five to a maximum of seven years in

-5-

prison.

BY THE COURT: And/or a fine of $5,000.

BY [DEFENSE COUNSEL]: And a fine of $5,000 and including a possibility of jail time from one to 12 months. That's my understanding that it was. Perhaps I'm not making this record at the appropriate time. But my understanding was that the Court's prior ruling that I would not be allowed to ask those specific questions, and that I would be allowed at a later date to state specifically which questions that I would have asked if I had been allowed to do so. And this is my effort to do so at this time.

BY [THE STATE]: Your Honor, I think adherent in that ruling was that he was going to ask the questions that the Court was going to allow him to ask. It appears that this record was by way of any offer of proof. And I'm not sure that it was, but by way of offer of proof, which I think it must be since we are trying to make some kind of a record here. Then I would object to that offer of proof and ask that the Court sustain that objection.

BY THE COURT: I think it had to be asked during the voir dire, at least, approach the Court during the voir dire to make that offer of proof. Had that offer of proof been made[,] it would have been refused. I would have let counsel ask about the fact that there could be jail time, there could be fines, there could be a prison, and in fact, in this case could be lots of time. But counsel did not do that. So at this particular time[,] it will be refused.

BY [DEFENSE COUNSEL]: Thank you, Judge.

A necessary component of the guarantee for an impartial jury under both the United States and Missouri Constitutions is an adequate *voir dire* that identifies unqualified jurors through the discovery of bias or prejudice. U.S. CONST. amends. VI, XIV; MO. CONST. art. I, § 18(a) (1945, as amended 1976); ***State v. Johnson***, 207 S.W.3d 24, 40 (Mo. banc 2006); ***State v. Gilbert***, 103 S.W.3d 743, 746 (Mo. banc 2003). The trial judge is given wide discretion in conducting *voir dire*

-6-

and determining the appropriateness of specific *voir dire* questions. *Johnson*, 207 S.W.3d at 40 (citing *State v. Oates*, 12 S.W.3d 307, 310 (Mo. banc 2000)). Once *voir dire* has concluded, the trial court has the discretion to decide whether to re-open *voir dire* for further questioning. *State v. Mayes*, 63 S.W.3d 615, 628 (Mo. banc 2001); *State v. Chambers*, 891 S.W.2d 93, 102 (Mo. banc 1994); *State v. Parker*, 886 S.W.2d 908, 921 (Mo. banc 1994).

A trial court's *voir dire* ruling will be reversed only where an abuse of discretion is found and the defendant can demonstrate prejudice. *Johnson*, 207 S.W.3d at 40. A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration. *Id.* (citing *State v. Brown*, 939 S.W.2d 882, 883 (Mo. banc 1997)). Where reasonable persons can differ about the propriety of the action taken by the trial court, no abuse of discretion will be found. *Id.* The defendant bears the burden of showing that there is a "real probability" that he was prejudiced by the abuse of discretion. *Johnson*, 207 S.W.3d at 40 (citing *Oates*, 12 S.W.3d at 310).

The trial court's ruling on the State's Second Motion in Limine was interlocutory in nature; meaning, it was a preliminary expression of the trial court's opinion and was subject to change during the course of the trial. *Mayes*, 63 S.W.3d at 628. When a motion in limine is granted, in order to preserve the issue for appeal, a defendant has to attempt to introduce the evidence, and if an objection to the proffered evidence is sustained, he must make an offer of proof. *State v. Lloyd*, 205 S.W.3d 893, 906 (Mo. App. 2006); *State v. Yole*, 136 S.W.3d 175, 178 (Mo. App. 2004); *State v. Raines*, 118 S.W.3d 205, 211 (Mo. App. 2003). "Courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced, and in light of the circumstances that exist when the questioned evidence is actually proffered." *State v. Chambers*, 234 S.W.3d 501, 511-12 (Mo. App. 2007). "Although one purpose of a pretrial motion *in limine* is obviously to exclude inadmissible evidence at trial, it also serves the second purpose of prohibiting a party from placing an improper and prejudicial issue before the jury through *voir dire* [.]" *State v. Albanese*, 9 S.W.3d 39, 52 (Mo. App. 1999).

[Petitioner] did not attempt to introduce the issue of punishment in any manner during *voir dire*. When he finally brought the issue to the

-7-

trial court's attention, the *voir dire* had concluded, the jury panel had already been dismissed for lunch, and the trial court was beginning to take up challenges for cause. [Petitioner], by making his "record" or offer of proof after *voir dire* had concluded, essentially was asking the trial court to re-open *voir dire*. The trial court's denial of [petitioner's] offer of proof, ruling that his questions "had to be asked during voir dire," was not an abuse of discretion. Given the delayed timing of [petitioner's] offer of proof, the trial court did not act unreasonably in refusing to re-open *voir dire* and allow [petitioner] to ask his proffered questions.

In addition, this court fails to see any prejudice to [petitioner] from the trial court's exclusion of an issue that [petitioner] never attempted to introduce during *voir dire,* especially considering the trial court's interlocutory ruling on the motion in limine which allowed [petitioner] to explore the subject using general questions. n.5

> n.5 The trial court's ruling that [petitioner] could only ask questions regarding punishment using the language from ***Busse*** as a guide did not entirely prohibit questions on the range of punishment as [petitioner] asserts. [Petitioner] argues that the holding from ***Busse*** allowed him to inform the jury panel of the maximum sentence—"a lot of time" or "a very long time" in prison—but not the minimum sentence, thus he could not ask the jury to consider "the full range" of punishment. We disagree. Using the language from ***Busse*** as a guide, [petitioner] could have asked questions about the range of punishment, he just had to use general terms. The trial court stated that had [petitioner] chosen to ask any questions about punishment, it would have allowed him to generally inform the jury panel that "there could be fines," "there could be jail time," or there "could be lots of time" in prison. Asking the jury panel whether they could consider anything from a "fine" to "lots of time" in prison would adequately convey the full range of punishment.

Even in light of that ruling, [petitioner] chose not to address the issue. Moreover, the record indicates the jury was able to appropriately consider the range of punishment, because the jury recommended a punishment of thirty years' imprisonment on Count 1 for forcible rape and fifteen years' imprisonment on Count 3 for forcible rape, both of

which were within the range of punishment provided by the statute under which [petitioner] was charged. Section 566.030. *See State v. Arrington*, 375 S.W.2d 186, 195 (Mo. 1964); *Busse*, 169 S.W.3d 900, 905. [Petitioner's point] is denied.

(Respondent's Exhibit D, pp. 11-16).

[Ground 2]

On the morning of [petitioner's] trial, the computer program that creates a random jury seating list and chart from the names of potential jurors who have checked in was malfunctioning. The Circuit Clerk sought assistance from the Office of State Courts Administrator ("OSCA"), which had provided all of the circuit courts with the computer program, but OSCA was unable to fix the problem. The trial judge advised the Circuit Clerk to write down on individual slips of paper the names of the fifty-three people who had checked in, and then draw them randomly out of a container. The bailiff drew slips out of the container one at a time and handed each one to the Circuit Clerk, who would call out the name as one deputy clerk wrote the name on a list and another deputy clerk typed the name onto a seating chart. Before commencing *voir dire,* the trial judge examined the Circuit Clerk on the record, who testified to the foregoing facts. On cross-examination, defense counsel asked him:

> [DEFENSE COUNSEL]: [T]he procedure where by [sic] the computer randomizes this seating chart is that a procedure prescribed by the local board of jury commissioners?

> [CIRCUIT CLERK]: That is the procedure which the State of Missouri-it is their program which they have given each circuit clerk's office to use.

> [DEFENSE COUNSEL]: Is there a Board of Jury Commissioners for Barry County?

> [CIRCUIT CLERK]: Not that I am aware of.

Once defense counsel was finished questioning the Circuit Clerk, he moved to dismiss the jury panel, arguing that under Missouri statutes, randomization of the jury selection process must be done in a manner prescribed by a Board of Jury Commissioners, and that was not complied with in this case because there was no Board of Jury

-9-

Commissioners. The trial court denied the motion. [Petitioner] raised the issue again in his post-trial Motion to Stay the Proceedings and Motion for New Trial. The trial court denied those motions as well. On appeal, [petitioner] argues that there was a substantial failure to comply with Chapter 494, which violated his rights to due process and a properly selected jury under the United States and Missouri Constitutions, because Barry County did not have a Board of Jury Commissioners to manage the jury selection process, as required by Section 494.405.1; therefore, there was a "virtual noncompliance" with the provisions of Chapter 494.

The test for evaluating a claim of improper jury selection is whether there has been substantial compliance with the jury selection statutes. *State v. Sumowski*, 794 S.W.2d 643, 647 (Mo. banc 1990); *State v. McGoldrick*, 361 Mo. 737, 236 S.W.2d 306, 307–08 (1951); *State v. Sardeson*, 174 S.W.3d 598, 599–600 (Mo.App.2005). Only a substantial failure to comply with the statutory jury selection requirements entitles a defendant to relief. Section 494.465.1; *State v. Anderson*, 79 S.W.3d 420, 431–32 (Mo. banc 2002). A substantial failure to comply is one that either rises to the level of a constitutional violation or that actually prejudices the defendant. *Anderson*, 79 S.W.3d at 431–32.

Section 494.405 states in relevant part:

> 1. There is hereby created in each county, and each city not within a county, a board of jury commissioners. The board shall be responsible for managing and supervising the jury selection process. A majority of the members of the board shall constitute a quorum for the transaction of business. The time, place and manner of meetings of the board and the rules for performing its duties shall be fixed by the board.
>
> 2. The board of jury commissioners shall be comprised of the presiding judge of the circuit, or a circuit or associate circuit judge of the circuit designated by the presiding judge, the clerk of the circuit court, and the county clerk. The judge member of the board of jury commissioners shall be the presiding officer. In counties of the first class having charter forms of government and in any city not within a county, the circuit court en banc shall

-10-

constitute the board of jury commissioners, and the presiding judge of the court en banc shall preside. Nothing herein shall be construed to diminish the statutory term of office or the statutory compensation of any person currently serving as jury commissioner.

3. The clerk and deputy circuit clerks of the circuit court shall assist the board of jury commissioners in clerical and administrative duties as specified by the board....

In support of his contention that no Board of Jury Commissioners existed for Barry County, [petitioner] cites only to the Circuit Clerk's testimony that he was not "aware of" any such board. In fact, section 494.405 creates a Board of Jury Commissioners for Barry County, whether or not the Circuit Clerk is aware of it. By operation of law, the presiding judge, circuit clerk, and county clerk for Barry County comprise the Barry County Board of Jury Commissioners. Section 494.405.2. The Circuit Clerk's unawareness of the Board's existence does not change the fact that he was acting in his role as a Jury Commissioner when he managed the jury selection process on the morning of [petitioner's] trial. When the computer system normally used to randomly select a list of jurors malfunctioned, the Circuit Clerk consulted the trial judge, who was the presiding circuit judge for Barry County at that time. Both were acting in their roles as Jury Commissioners when they decided on the alternate method of selection to use that morning. *See* section 494.420.2. Even if they were unaware that they were acting as members of the Board, they sufficiently carried out their duties to fulfill the requirements of Chapter 494. The alternate method of selection they chose is an acceptable method for randomly selecting a jury panel. *See McGoldrick*, 361 Mo. at 739–40, 236 S.W.2d 306 (former jury selection statute prescribed method of drawing slips of paper out of a box). *See also State v. Rouner*, 333 Mo. 1236, 64 S.W.2d 916, 917–18 (1933).

Other than his claim that there was no Barry County Board of Jury Commissioners to fulfill the statutory requirements, [petitioner] does not present any evidence that there was a substantial failure to comply with Chapter 494. [petitioner] also does not claim any prejudice as a result of the method of jury selection that was used. The record before us does not reveal any evidence of prejudice to [petitioner] or that the method of selection used violated his constitutional right to a fair and impartial jury. *See Anderson*, 79

-11-

S.W.3d at 431–32. Accordingly, [petitioner's point] is denied.

(Respondent's Exhibit E, pp. 8-11).

[Ground 3]

[Petitioner] contends the trial court erred in denying his motion for a mental examination, under section 552.020, on the day before trial. He argues that defense counsel alleged he had concerns about [petitioner's] competence to assist in his defense at trial, due to his statements that God was talking to him and would perform a miracle for him if he did not assist in his own defense; therefore, the trial court had reasonable cause to believe that [petitioner] was unable to assist counsel in his defense and abused its discretion in denying the motion.

Section 552.020.1 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so long as the incapacity endures."

The test for competency is whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as a factual understanding of the proceedings against him. *Edwards v. State*, 200 S.W.3d 500, 519 (Mo.2006). "In Missouri a defendant is presumed competent, and has the burden of proving incompetence by a preponderance of the evidence." Section 552.020.8; *State v. Anderson*, 79 S.W.3d 420, 432–33 (Mo. banc 2002). When sufficient information comes before the court such that the judge has reasonable cause to believe the defendant lacks fitness to proceed, the judge must order a mental examination, even if counsel has not raised the issue. Section 552.020.2; *State v. Yeager*, 95 S.W.3d 176, 179 (Mo.App.2003). "Reasonable cause may arise from evidence adduced or from the trial court's personal observation of [the defendant]." *State v. Mercado*, 787 S.W.2d 848, 851–52 (Mo.App.1990). "The mere filing of a motion under [section] 552.020 and counsel's naked assertion that the accused is incompetent does not provide the trial court with reasonable cause to believe that the psychiatric examination is required. There must be evidence tending to show incompetency or it must appear to the trial court from personal observation that the defendant is incompetent." *Guinan v. State*, 726 S.W.2d 754, 757 (Mo.App.1986). Where the available facts do not

rise to the level of "reasonable cause," the trial court has broad discretion in deciding whether to order a mental exam. *Holman v. State*, 88 S.W.3d 105, 110–11 (Mo.App.2002); *State v. Tilden*, 988 S.W.2d 568, 576–77 (Mo.App.1999). The court is not a mere "automaton" that must grant such motions just because they have been filed. *Woods v. State*, 994 S.W.2d 32, 37 (Mo.App.1999).

"The guiding issue of appellate review where the court has *not sustained or instituted* an order for a mental exam under [section] 552.020.2, is not whether the defendant was truly competent to stand trial, but, rather, whether the failure to order an exam under the circumstances constituted a denial of due process." *Woods*, 994 S.W.2d at 37. When reviewing whether reasonable cause existed to have ordered an exam, this court determines whether a reasonable judge, in the same situation as the trial judge, should have experienced doubt as to the defendant's competency. *State v. Tokar*, 918 S.W.2d 753, 762–64 (Mo. banc 1996); *State v. Elam*, 89 S.W.3d 517, 521 (Mo.App.2002). The trial court's determination of competency is a factual determination that must stand unless unsupported by substantial evidence. *Elam*, 89 S.W.3d at 521; *Tilden*, 988 S.W.2d at 576. We defer to the trial court's factual determinations without re-weighing the evidence, as the trial court is in the best position to assess the credibility of those testifying and weigh the evidence accordingly. *State v. Baumruk*, 85 S.W.3d 644, 648 (Mo.2002); *Elam*, 89 S.W.3d at 521; *Tilden*, 988 S.W.2d at 576.

On the day before trial, [petitioner] filed the motion entitled, "Motion For Continuance For Evaluation Under MO REV STAT SEC. 552.020." As to [petitioner's] mental status, the motion alleged:

> [Petitioner] *appears* to believe that God talks to him, through other people. [Petitioner] *appears* to believe that God is going to perform a miracle on his behalf in this case. [Petitioner] *appears* to believe that it would be wrong for him to assist in his defense and in preparation for trial. [Petitioner] *appears* to believe that to do so would result in God's withholding the miracle. (Emphasis added).

[Petitioner's] counsel did not ask for an evidentiary hearing on this motion, and thus, no evidence as to [petitioner's] mental status was before the trial court. In the absence of such proffered evidence, the trial court was left with only its personal observations with which to evaluate [petitioner's] current mental competency. *Guinan*, 726

-13-

S.W.2d at 757.

The trial court denied the motion, stating:

> This Court has had the opportunity to observe [petitioner] during court appearances. At all times he has behaved in a proper manner. [Petitioner] had requested a speedy trial. This case was set for trial in January, it was continued and over the [petitioner's] objection. He certainly appeared lucid and at that time wanted the case to go to trial. It was reset for March and once again was continued and over [petitioner's] own objection because he was wanting a speedy trial. He has appeared here in court today. He has been able to [-] appears to at least confer with counsel. He has been respectful in court. I don't see any basis for an examination.

During a recess at trial, the trial court questioned [petitioner] on the record about his decision not to testify. [Petitioner] stated that he understood no one could force him to testify. He also stated that he had discussed his decision with his attorneys, and it was his own decision not to testify.

At the sentencing hearing, [petitioner] stated he did not know of any reason why the sentence and judgment of the court should not be pronounced. He confirmed that he understood the trial court's explanation of his rights under Rule 29.15. n.3

> n.3 All references to rules are to Missouri Court Rules (2006).

When the trial court examined [petitioner] on the record about the assistance of his counsel, he affirmed that he was found guilty of the crimes charged, and sentenced to a total of forty-five years' imprisonment. He informed the trial court that he did not have enough time before trial to consult with his attorneys. The trial court granted a short recess for [petitioner] to consult with his attorneys, and when they returned to the record, [petitioner] stated that he sat in jail for three months not knowing what he was arrested for, and another nine to ten months before meeting his attorneys. He claimed his attorneys did not do enough investigation. He said he did give his attorneys the names and addresses of witnesses, but his attorneys did not interview all of them. The court had the attorneys read a long list of names of witnesses that were deposed and testified at trial.

-14-

[Petitioner] named one witness who did not testify, and the court confirmed that the State stipulated to her testimony. [Petitioner] stated, "I just don't think I deserve none of this" and began to cry.

This record refutes [petitioner's] contention that there was reasonable cause to believe he was unable to understand the proceedings against him or assist in his defense. *See* ***State v. Messenheimer***, 817 S.W.2d 273, 278 (Mo.App.1991) (court upheld denial of motion for mental exam based in part on [petitioner's] responses to trial court's examination on his decision not to testify and on [petitioner's] statements made at sentencing hearing). After the motion for mental examination was denied, defense counsel made no further allegations during trial or sentencing that [petitioner] was unable to assist in his defense. The allegations in [petitioner's] motion that petitioner appeared to be talking or listening to God are not self-proving and, standing alone, are insufficient to provide reasonable cause to the trial judge to doubt [petitioner's] competence. ***Guinan***, 726 S.W.2d at 757; ***Woods***, 994 S.W.2d at 37. The record does not reveal any evidence that would cause the trial judge, based on his personal observations, to doubt [petitioner's] competence. As the trial judge noted, prior to trial, [petitioner] was eager to have his trial begin, objecting to motions for continuance. At all times during trial and sentencing, [petitioner] appeared to be completely engaged with his attorneys and the trial judge and exhibited a rational and factual understanding of the proceedings against him. Because there was no evidence providing reasonable cause to the trial court to doubt [petitioner's] competency, the trial court did not abuse its discretion in denying the motion for mental examination. [Petitioner's point] is denied.

(Respondent's Exhibit E, pp. 3-8).


[Ground 4]

[Petitioner] claims the trial court abused its discretion in sending Kashina Bergesch's written statement to the jury during deliberations because it was testimonial in nature and unduly bolstered and emphasized her trial testimony. [Petitioner] argues that he was prejudiced because the jury was allowed to give her statement undue weight by reading it additional times, while the testimony of [petitioner's] witnesses which contradicted Bergesch's version of the events was heard only once.

-15-

The decision to send an admitted exhibit to the jury during deliberations lies within the trial court's discretion. *State v. Wolfe*, 13 S.W.3d 248, 257 (Mo. banc 2000); *State v. Parker*, 208 S.W.3d 331, 338 (Mo.App.2006). The trial court abuses its discretion only if its decision was clearly against reason and resulted in an injustice to the defendant. *Wolfe*, 13 S.W.3d at 257. The objecting party bears the burden of showing the prejudicial result of sending exhibits to the jury. *Parker*, 208 S.W.3d at 338.

"The broad 'general rule is that exhibits that are testimonial in nature cannot be given to the jury during its deliberation.'" *Id.* (quoting *State v. Evans*, 639 S.W.2d 792, 795 (Mo. banc 1982)). "An exception, however, is made for written or recorded confessions in criminal cases, apparently on the theory that their centrality to the case warrants it." *Evans*, 639 S.W.2d at 795. *See also State v. Jennings*, 815 S.W.2d 434, 440–41 (Mo. App.1991). This court has affirmed the trial court's decision to send witness statements to the jury during deliberation when the statements were not duplicative of or did not improperly bolster the witness' trial testimony. *Parker*, 208 S.W.3d at 338–39; *State v. Skipper*, 101 S.W.3d 350, 352–54 (Mo.App.2003); *State v. Sullivan*, 925 S.W.2d 483, 485–86 (Mo.App.1996); *Jennings*, 815 S.W.2d at 440–41; *State v. Thomas*, 820 S.W.2d 538, 542–43 (Mo.App.1991).

Here, the State called Bergesch as a witness during its case-in-chief. She stated that on the night in question, she returned to her apartment to hear Victim screaming inside the vacant apartment next to hers. Bergesch tried to unlock the door but was unable to do so, so she went through the window. Once inside, she saw [petitioner] on top of Victim. As she turned around to take Victim out of the apartment, she saw two other people in the apartment, one of whom was Wilson. Defense counsel did not cross-examine Bergesch, but asked that she be kept available on subpoena.

The State's next witness was Monett Police Detective John Allred. On cross-examination, defense counsel elicited from Allred that Bergesch had given him a written statement and a videotaped interview. Defense counsel showed Allred the written statement, marked as "Defendant's Exhibit L," and asked him whether Bergesch had mentioned anything in the statement about other people being in the apartment. Allred replied that she had not. On redirect examination, the State offered "Defendant's Exhibit L" into evidence. [Petitioner] objected to its admission on the grounds that the statement was hearsay, improper bolstering of Bergesch's testimony,

-16-

a violation of [Petitioner's] constitutional rights to confrontation and cross-examination, and repetitive and cumulative evidence. The trial court overruled the objection, stating:

> Well, you—you've presented it, so you had the opportunity to cross-examine Ms. Bergesch and she's still available; you can call her back. But it's pretty much before the jury. And it appears to me if you wanted to offer it for the truth that she never made statements about others being in there, the objection will be overruled and the Court will receive it into evidence.

The statement reads:

> I, Kashina Bergesch, came home and was walking up the stairs to my apartment. On my way upstairs I heard [Victim] screaming "Quit. Stop. Don't. Get off of me." and it was in an apartment where no one was supposed to be in. I tried the door and it was locked, I knew I had to get in there to see what was going on so I checked the window and it was unlocked, so I went in there. When I did I seen [petitioner] on top of [Victim] holding her down having sex with her. I pulled him off of her and took her to my apartment until she went to the hospital with Mrs. Kelly. KB

[Petitioner] called Officer Dennis Camp as a witness for the defense and asked him what Bergesch had said to him on the night of the charged crimes. Officer Camp testified that Bergesch told him she was walking back to her apartment when she heard something coming from the vacant apartment next to hers. She told him that she looked in the window and saw [petitioner] on top of Victim.

[Petitioner] then called Bergesch to the stand. In response to defense counsel's questions, Bergesch said that she was unable to see anything through the window because it was dark, and that she had to go into the kitchen of the vacant apartment to see what was going on. She admitted that if she told anyone that she was able to look into the window and see what was going on, that statement would have been incorrect. On cross-examination, the prosecutor asked Bergesch if she recalled the written statement she had made. She replied that she did and said that she had written in the statement that she checked the window and it was unlocked, so she went inside, and it was then

-17-

that she saw [petitioner] on top of Victim.

During deliberations, the jury sent a note to the judge asking to see Bergesch's written statement. Defense counsel objected, on the basis that it was testimonial and improperly bolsters a portion of Bergesch's testimony. The trial court overruled the objection and sent "Defendant's Exhibit L" to the jury.

Based on the record, this court fails to see how sending the exhibit to the jury caused any prejudice or injustice to [petitioner]. Deeming it to be in his advantage, [petitioner] initially injected the written statement into the trial and brought it to the jury's attention when, while cross-examining Allred, he used it to impeach Bergesch's testimony. In response, the State introduced the exhibit into evidence and used it to rehabilitate Bergesch's testimony. [Petitioner] made Bergesch's testimony a central issue of the case by questioning the validity of her testimony and using the written statement to impeach her. [Petitioner] cannot now demonstrate prejudice from the trial court's failure to shield the statement from the jury's review during deliberations, after using the statement as a sword for his own benefit to impeach her testimony. *See Sullivan*, 925 S.W.2d at 485–86. Because the written statement became a central issue in the case, no undue influence resulted from letting the jury review it. *Evans*, 639 S.W.2d at 795; *Jennings*, 815 S.W.2d at 440–41. Moreover, the statement did not improperly bolster Bergesch's trial testimony because the statement was written for Allred as part of his investigation on the night of the charged crime and cannot be considered as "duplicative" of Bergesch's trial testimony, especially considering the manner in which [petitioner] utilized it for his benefit, the statement was inconsistent with and impeached her trial testimony. *See Parker*, 208 S.W.3d at 338–39; *Skipper*, 101 S.W.3d at 352–54; *Sullivan*, 925 S.W.2d at 485–86; *Jennings*, 815 S.W.2d at 440–41; *Thomas*, 820 S.W.2d at 542–43. The trial court did not abuse its discretion in sending "Defendant's Exhibit L" to the jury because [petitioner] cannot demonstrate that he suffered any prejudice as a result. *Wolfe*, 13 S.W.3d at 257; *Parker*, 208 S.W.3d at 338. [Petitioner's point] is denied.

(Respondent's Exhibit E, pp. 17-20).

The resolutions of grounds 1, 2, 3, and 4 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000).[2]

Grounds 1, 2, 3, and 4 are denied.

## <u>GROUND 5</u>

In ground 5, petitioner claims that the motion court erred in denying his Rule 29.15 motion for post-conviction relief because his counsel was ineffective for failing to fully explain so that petitioner understood the ramifications of accepting an offer to plead guilty to a lesser charge.

On appeal from the denial of his Mo. Sup. Ct. Rule 29.15 Motion, the Missouri Court of Appeals disposed of petitioner's claims as follows:

> Because this claim is unrelated to the fairness of [petitioner's] trial, we conclude that it is not cognizable in this Rule 29.15 proceeding.
>
> "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Strickland v. Washington***, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, [petitioner's] motion does not allege he did not receive a fair trial; rather, it is that he is dissatisfied with the results of the trial in that he received a less favorable sentence than he might have if he had pleaded guilty. [Petitioner] relies on ***State v. Stillings***, 882 S.W.2d 696 (Mo. App. S.D.1994), for the proposition that a movant can make a valid claim

---

[2]According to the opinion of Justice O'Connor, joined by four other members of the Court, "under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." <u>Williams</u>, 529 U.S. at 412-13.

for ineffective assistance of counsel when the movant, due to the alleged deficient conduct of his counsel, has not accepted a plea agreement and has instead stood trial. n.4

> n.4 In *Stillings*, this Court stated that where "an accused who has stood trial and been convicted seeks post-conviction relief on the ground that his lawyer rendered ineffective assistance in failing to relay a prosecutor's plea offer, the accused must demonstrate a reasonable probability that he would have accepted the offer instead of standing trial." 882 S.W.2d. at 704.

In contrast, the State relies on the holdings in *Bryan v. State*, 134 S.W.3d 795, 802 (Mo. App. S.D.2004) and *Rowland v. State*, 129 S.W.3d 507 (Mo. App. S.D.2004), where this Court determined the errors asserted were not cognizable in a Rule 29.15 motion because movant's points did not specifically demonstrate how counsel's actions surrounding the plea caused the actual trial to be unfair. n.5

> n.5 In both *Bryan* and *Rowland*, the movant was also convicted after proceeding to trial and alleged counsel was ineffective by failing to adequately advise movant on a plea offer, thereby causing him to reject a plea offer.

In *Stillings*, we presumed such a claim was cognizable in a Rule 29.15 proceeding by applying, in reverse, a principle drawn from Rule 24.035 proceedings. No other analysis or authority supported our conclusion. *Stillings*, 882 S.W.2d at 704. For the reasons explained in *Rowland* and *Bryan*, a defendant's claim that trial counsel's alleged lack of advice deprived the defendant of a chance to plead guilty and obtain a shorter sentence is simply not cognizable in a Rule 29.15 proceeding because it has nothing to do with whether the defendant's trial itself was fair. *Bryan*, 134 S.W.3d 795, 801–04; *Rowland*, 129 S.W.3d 507, 510–11. To the extent that *Stillings* and *Collins v. State*, 231 S.W.3d 861, 863–64 (Mo. App.2007), express a contrary view, they are overruled. [Petitioner's] claim is not cognizable in this Rule 29.15 proceeding.

Even assuming [petitioner's] claim were cognizable, he still would not be entitled to relief on appeal. His testimony was the only evidence offered in support of that claim. The motion court made a specific factual finding that it placed "no credence in [petitioner's]

-20-

> self serving testimony, including his claims that he was not properly
> advised as to the ramifications of his accepting the offer to enter an
> open plea of guilty to one charge of statutory rape in the second
> degree rather than going to trial on the more serious charges."
> Conversely, the motion court found that Attorney King's testimony
> was credible. Witness credibility is a matter for the motion court to
> resolve, and we defer to its determinations. *See **Hurst**,* 301 S.W.3d
> at 117. Point denied.

(Respondent's Exhibit J, pp. 6-8).

The resolutions of ground 5 by the state courts did not result in "a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or in "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2) (as amended April 24, 1996), as defined by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

Ground 5 is denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." Tennard v. Dretke, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. See 28 U.S.C. § 2254, Rule 11(a).

## ORDER

Accordingly, it is **ORDERED** that:

(1) the above-captioned petition for a writ of habeas corpus is denied;

-21-

(2) this case is dismissed with prejudice; and

(3) the issuance of a certificate of appealability is denied.


        /s/ Dean Whipple
       DEAN WHIPPLE
       UNITED STATES DISTRICT JUDGE


Kansas City, Missouri,

Dated: May 30, 2012.